Next case is number 16-1411, Paice LLC v. Ford Motor Company. Mr. Cordell, before you begin with the merits of this, it's our understanding that there were three Paice Ford cases argued in December which have some overlap with the cases that we had this morning and that there are 16 other cases which have been consolidated into four cases for argument. To what extent is there overlap between the cases that we have this morning and the 16 cases which are yet to be argued? Thank you, Your Honor. Ruffin Cordell for Paice. May it please the Court. There is a fair amount of overlap. The Court has seen in the three arguments we have here this morning that there are common issues between the three. There are five patents at issue, but they derive from a common specification. So we have claim construction issues that are common across the appeals. There are factual issues that are common. Even this morning, for example, we will be talking about the Anderson reference in the first appeal and in the third appeal. So there is a great deal of overlap. To both counsel, there is overlap in these three cases that we have this morning also. So please try to avoid repetition in the three arguments. That was going to be my first point, Your Honor. I conferred with Mr. Moore before the argument as to whether he had a view about whether we should do these in series or issue by issue, and that is really up to the Court. We agreed that, obviously, we are mere servants here. So what would be the Court's preference with respect to addressing each of the appeals in turn or should we take an issue and run it through? Why don't you address the appeals in turn, but to the extent that the issue is the same, just refer back to the earlier appeal or refer forward to the other appeal. One curlicue on that. When you refer to the prior art, can you give the prior art's own column and page numbers? Because there is a decent chance that you are going to be using a JA number that is different from the one I am using. Thank you, Your Honor. That is a good point. I spent some time this morning actually trying to cross-reference them, realizing that it really is a difficult thing. So beginning with the 1411 appeal, which is on the 097 patent, and the independent claim at issue is claim 30. This claim deals with a profound invention, an invention where Dr. Severinsky realized that he had an ability that the prior art had never offered before. He could use a hybrid structure to allow him to better manage emissions, and that came out in a very specific approach, and the approach is this, that as the vehicle is cycling through the driving cycle, and as we drive on the roads, we all find that sometimes we need to accelerate quickly or stop quickly in a system that uses a gas engine, that those fast changes become a problem with respect to emissions, and what Dr. Severinsky discovered is that he could artificially limit the rate of change of the output torque of the engine. So the driver wants to go fast, and the microprocessor says no, says I will not allow you to accelerate the engine at that rate because it is going to damage stoichiometry that the courts read about in the briefs. That was disclosed in Anderson, right? It was not. It was not. So the Anderson reference is very specific, and I would love to spend a fair amount of time talking about Ms. Anderson's work. Ms. Anderson's system is devoted to what we call a series-parallel system. She describes them as two distinct extremes, a series hybrid and a parallel or follower hybrid, and the reason why she calls those distinct extremes is because they really are different vehicles. A series hybrid is essentially an electric car with a generator that you put in the back seat, and the only function of the generator, the gas engine, is to turn the generator from time to time to recharge the batteries. Make no mistake, the series hybrid that is the subject of Ms. Anderson's paper is an electric car. It only operates in electric mode. The engine never, I underscore never drives the wheels. There is only one mode in Ms. Anderson's system. I understand that, but it does teach limiting the acceleration of the motor to have it operate within this stoichiometric band, right? What Ms. Anderson recognizes is that fast transients are bad, and she specifically impugns the parallel system, which is in the Severinsky 970 prior art, as being bad. It has fast transients. She says slow transients are good. The question then becomes how do we accomplish that? What Ms. Anderson says is you do that using a hybrid strategy. You use that using a series strategy that decouples the engine from the drive train. Let me just try to focus at least my version of this. Anderson does teach, contemplate that the engine would be kept to low transients, right? With due respect, no, Your Honor. What she contemplates is that she's going to choose a system wherein the engine operates at slow transients. There's a difference. You can choose a system, which is, for example, her series hybrid, where the engine runs at constant power at all times. There are no transients. You wanted us to focus on Claim 30, even though this comes up in a lot of the claims. What language do you think is missing from Anderson? I think I understand your argument that she's doing it in a completely different context. The engine just never needs to do very much because it's not coupled. Then one can argue about that, but I'm trying to attach that point about Anderson to specific claim language that you say is not present in Anderson because of that difference in structure. Understood, Your Honor. We begin with, I guess, the second clause of the claim that requires an internal combustion engine, etc., wherein said engine has an inherent maximum rate of increase of output torque. That could be good or bad. Then we go down to the first wherein clause. I'm sorry. We go down to the second wherein clause, wherein said controller controls said engine such that a rate of increase of output torque of said engine is limited to less than said inherent maximum rate of increase of output torque. What that's saying is that we recognize that engines may be chosen to have slow transients. That's well known. Ms. Anderson suggests that's exactly what you do. In her hybrid system, her series hybrid, we don't need fast transients, so pick an engine with slow transients and run it at a constant power. That's not a problem. What Dr. Severinsky says is, I've got a parallel system. I can't do that. But does Anderson not say that a controller is keeping the gas engine from fast transients? Correct. It just has an engine that can't have fast transients? It simply says, we're going to use slow transients. She actually never explains exactly how she accomplishes that. The paper talks about choosing components. I think a fair reading of the reference is that she's picking components that are sized so that there aren't a lot of transients or that there are at least slow transients. But she never says that she has a controller. She doesn't disclose any method to limit that rate of change of output torque. That's a critical point here. In Dr. Severinsky's system, when we go back to the parallel system, you have no choice. When the driver demands acceleration, the driver wants to get on the freeway, you have to provide that. In Dr. Severinsky's system, you're going to have fast transients and those are bad. Ms. Anderson acknowledges that. So she says that my system can be used for parallel hybrids also. So your argument is that the board heard in relying on that because, in your view, Anderson doesn't show the control that's necessary to fall within the claims? Correct. And I would argue, Your Honor, that when she says my system can be used for other vehicles, it's a very general statement. She doesn't qualify it as to any vehicle. Hybrids, non-hybrids, bicycles, it could be anything. And that kind of a general... But she refers specifically to parallel hybrids, right? She talks about picking components and that the concepts and choosing the components can go back and forth. But she specifically denigrates parallel hybrids and said that in order to manage... And you're not answering my question. She says specifically my system could be used for parallel hybrids, right? I disagree with that. I think that what she says is the general concepts here are applicable to all vehicles. Is this the thought processes language? The thought processes, exactly. I thought in your briefs you said there's the language about thought processes and that's so general it's not telling you anything. And then there's the other language about... That she doesn't otherwise say my specific concepts about... She doesn't say that those apply to the parallel. That's right. And in fact, what she says is when she's talking about emissions, so we go to appendix 778 in the 1411 record, which is page seven of nine of the Anderson paper. She says when she's talking about emissions, she makes specific reference in the penultimate paragraph on the page as a series hybrid vehicle decouples both the speed and the power of the wheels, this extra degree of freedom can be used to reduce emissions. So she specifically recognizes that it is this series hybrid strategy that allows her to manage the emissions. She never says I'm going to limit the output torque of the engine. Instead, she says I'm going to use a strategy where it just doesn't matter. We don't have to worry about limiting the output torque of the engine because it is a series hybrid that allows us complete freedom to run the engine at whatever rate, at whatever power level we choose. And that's an absolutely true statement and both experts have agreed about that. If I can make one more argument about claim construction, Ford has taken the position that the three where in clauses need to be read completely divorced from one another. That what this exercise is, is an exercise in decoupling the individual elements of the claim and then going out into the prior art and looking for them and we obviously take issue with that. The context of this claim is such that, you know, the law tells us we read the claim as a whole and the claim as a whole talks about the controller, a single controller performing all of these acts. It talks about it in the context of the controller being responsive to an operator command. It's in the fifth clause of the claim where it says a controller operable to control the flow of electrical and mechanical power between the engine, the at least one electric motor and the one or more wheels responsive to an operator command. Ford's position is there could be multiple operator commands. We could have commands that deal with it in one context or the other, but your honors, that simply doesn't fit with the overall claim. Moreover, there's not a single embodiment in the specification that would support Ford's reading. Every single embodiment has coupled both the limiting of the output torque of the engine and supplementing that torque using an electric motor. So clarify something that feels, I guess, maybe a little bit like groundwork, but so claim 30 and therefore its dependent claims talk about a controller. Some of the earlier claims, which I guess aren't in 1411, but are in the third case, don't use the language of a controller, right? They're just describing methods and things happen. Do the parties differ what arguments were made below about whether that makes any difference? It feels to me like it might make a difference because at least some of Ford's argument and maybe the board's decision said, well, when a driver does this, the following result will occur and it satisfies a method step, which is not quite a controller. I'm confused about whether the existence and responsibilities of a device called a controller are central to some, but not all or to none of the claims or what? Well, so the answer is that it's a continuum and the claims as they move through the pattern become perhaps more specific or there are different ones. So Ford typically focuses on claim one because to them it seems the broadest. We typically focus on claim 30 or claim 21 because there are specific elements in the claims. So were arguments presented to the board to the effect, we can win on claim 30 even if we lose on claim one? It was a hodgepodge, Your Honor. We tended to focus on different claims at different times. We made the argument the same claim limitation aspects in linking the where in clauses together or the controller clauses, as Ford calls them, were present even in claim one. And so we take the position that all through this linkage is there and it's important because when we look at the combination of the prior art they put together, they rely on Severinsky, Dr. Severinsky's early work. And they say, ah-ha. You're well into your rebuttal time. Okay. Perhaps I should reserve then, Your Honor. Thank you. Mr. Moore. May it please the Court. I'd like to start with your initial question regarding the overlap between the cases. The overlap between these cases and the cases that were argued in December is really two main issues. The set point claim construction issue and the issue of whether the Severinsky patent, the 970 prior art teaches road load compared to a set point. Those are the two issues that overlap with the December cases. The other issues that issue in this appeal are new. What about the ones yet to be heard? I don't know the answer to that one. I'd like to also start with Anderson and the discussion of whether Anderson discloses limiting the rate and change of engine output torque. The Board clearly found that Anderson discloses limiting the rate and change of engine torque because it describes a hybrid strategy that controls slow transients. When it does that, the hybrid strategy... What about the question of whether it discloses a controller? By definition, all these systems have a controller. It's a control strategy. When it talks about a hybrid strategy, that's a hybrid strategy. It's not a controller. All a controller is, is a generic computer that determines when to use the motor, when to use the engine. The hybrid strategy is a program that would run on that controller. Could you have an engine that you put into the series arrangement that doesn't need to have its rate of torque output increase controlled because it's inherent in the design of that engine that it can only rise so fast? In one of the extreme situations they talk about, yes, you can do that in the series. But the Anderson... But isn't that just what... Why does Anderson teach any more than that? That is, just use an engine that can only have low transients without any controller having to tell it to do that. Because the Anderson reference talks about series. It starts off with a whole discussion of series hybrid strategies. Then it talks about parallel hybrid strategies. Then it ends that discussion by saying that the thought process in this paper are general enough that they can be applied to any vehicle. And then it goes into its discussion of the two extremes where it talks about an extreme that's a thermostat condition, which is a series condition, and it talks about an extreme which is a parallel configuration. Then after those extremes it says that neither of these are optimum. But now we're going to talk about the trade-offs to make an optimum strategy. So it already said that the thought processes in this paper are general enough they can be applied to any vehicle, and that's at Anderson at page 66. That strikes me as a very high level of generality and that what I don't, I guess, find in that material is something that, at least on its face, let's put aside for a minute, what experts said a reasonably skilled artisan would understand it to mean to say, let's have a controller that tells an engine that can have fast transients, please don't. And I can go into a lot more detail. If we go through Anderson, it goes on, and when it's talking about the trade-offs, one of the trade-offs it talks about is emissions, has a section on emissions, and in the emissions trade-off section it talks about where you can have these fast transients and how they're those effects, those bad emissions that you get from putting fuel into the engine too quickly can be solved by, quote, a hybrid strategy that only allows slow transients. And so it knew how to talk about series when it wanted to be specific, and it knew how to talk about... Where is that in Anderson? That's on page 69 of Anderson. It's at page 817 of the 2033 Joint Appendix and A778 of the 1411 Appendix. This is the one that says page 7 of 9? Correct. It's in the right-hand column. Right-hand column. The last sentence of the... Second to last full paragraph. Wait a moment. I'm confused. I'm looking at the 1411 Appendix. What page is that in? That would be page A778. Okay. And you see it's got the sentence... It's the beginning of the paragraph, it's talking about fast transients and the problem they create. Then the last sentence says, some of this effect can be reduced by using a hybrid strategy that only allows slow transients. So it's talking about a hybrid strategy in general, not a series strategy, not a parallel strategy. Pace tries to put a lot of weight on the next sentence, which is a completely different paragraph. But that shows when the author wanted to talk about a series hybrid, they limit it to a series hybrid. And the paragraph we're pointing to, this is one of these general thoughts that can be applied to any vehicle, because it only refers to it as a hybrid strategy, and it's a hybrid strategy that slows transients. The next paragraph is a completely different thought. We know that because, one, it's a completely different paragraph, two, it uses a transitionary word also. But I'm still a little confused here, because in the series hybrid, does she disclose controlling the transients? Yes, right here. In all hybrids, in any hybrid strategy. When you're talking hybrid strategy, the controller... So what would you do in the series hybrid to control the transients? You'd run the engine fast or slow, depending on what? In the series hybrid, you would just run the engine at a constant fuel injection. You'd turn the engine on only to charge your battery. So you could start your battery gradually and gradually increase the amount of fuel that's being provided to the engine, so that you don't have quick bursts of fuel like you have for acceleration. Because in a series, you're using a motor. In a series hybrid, you'd be controlling the engine during the startup period to avoid greater emissions. Yes, you control the engine totally, because the motor's driving the wheels only. I understand that. But what you're saying is there is a need to control, because the startup runs constantly when it's running, and it isn't buried by a controller, that the controller operates at the startup phase to control the transients. Yes, because you still want to run the engine at its efficient range. So you've got to go from zero to that efficient range. And all these pieces of priority say that the efficient range is a relatively high level of torque. So you've got to get there. And if you can control that at a more slow pace, then you can control how much fuel and how rapidly the engine has to change the stoichiometric ratio in a cylinder. And so if you do that at a more gradual pace, you can still reduce emissions. And you want to do it in a parallel system as well. And it goes on. If you look at the reference effect we talk about in the expert evidence here, how easy it would be to implement this change into the 970 patent, because these pieces of prior art really go together perfectly. It's a classic KSR combination where you're taking a known technique of limiting transients. Does the expert testimony talk about the need to control in the series hybrid? It talks about the motivation to combine Anderson with Severensky. Which is different, it seems to me. Well, it does talk about, and the board actually credited Ford's testimony over Pace's testimony with regard to slow transients applying equally to series and parallel. The board found that expressly on page A28 of the joint appendix, that the teaching of slow transients applies equally to series and parallel. And the board relied on the expert testimony. If you're looking at the 2033 joint appendix, the board opinion is A28, I can give you both. And then the expert testimony is A4013-4019, A3121-3123, and then if you're looking in the 1411 joint appendix, it's in the board opinion of page A14. It's in the expert testimony of A4058-64, A3832-33, and in that deposition it's page 179, line 22, through 182, line 14. Thank goodness these arguments are recorded. I just wanted to make sure, because there's a wealth of evidence that shows, it's more than substantial evidence, that the teaching regarding the hybrid strategy in Anderson applies equally to series and hybrids. So and also that the board made... What about the claim construction, which seems to me that your claim construction is a little problematic, but does that really make a difference? It doesn't make a difference here. First, we think Anderson readily discloses that, because the same sentence we're relying on where Anderson teaches a hybrid strategy that allows slow transients, it ends that sentence, it says, by placing the burden on the battery. And so it's exactly what we're talking about here with Anderson, because when you slow the transients in a hybrid, you're going to get less power from the engine. So the engine in a hybrid has got to come from one of two places. The fuel in the engine, or the battery in the motor. And so if you're going to slow the transients during a period of acceleration, which is what Anderson teaches, so you're not going to get the power from the engine. It teaches where you're going to get that power from. It's the battery, which drives the motor. But with regard to our claim construction, we think our claim construction is clear because it's based on the plain meaning of the claim language. The claim language in this case... Which claim construction are we talking about now? I assume he's talking about the together limitation regarding the controller limitations one and two. The three where in clauses suggest that these things have to happen together, or at least have the capability to happen together. This is important with the three where in clauses, because there's no dispute the second and third ones occur together. The claim language links those. In fact, you can see the contrast. The first where in clause is the motor supplement clause. The second one is the limit on the rate of increase in engine output torque. Those two don't have to be together, and you can see the difference because two and three are tied together in the claim language. One and two, there is nothing in the claim language that suggests they have to occur together. In fact, if you compare the claim language and the claims in the 097 patent to the claim language and the claims of a different PACE patent that's a divisional with the identical spec... Why are you arguing it if it doesn't make any difference? Just me. You had some problems with the claim construction. I just think independently we're right there as well. It's interesting that PACE didn't even raise this claim construction issue before the board. Even when we tried to suggest they were suggesting a claim construction issue, they've never suggested there was a claim construction issue. They've argued it only as a fact issue. It wasn't until they lost below that they suggested it was a claim construction issue, so trying to get the more deferential standard on appeal. The other issue that comes up, there was some discussion on the claim construction issue regarding Claim 30 of the language responsive to an operator command and whether that means one operator command has to trigger all those wear and clauses. When it says responsive to an operator command, all this is talking about is the controller works in response to the accelerator pedal and the brake. But when it says and command, that's an indefinite article. That could be one command or more commands. There's nothing in the claim language that requires that to be the same command that triggers all three. There's no antecedent basis. There's nothing in the claims to support that construction. In fact, there is a site that they make to the prosecution history on page 14, on page 10 of their gray brief in the 1411 appeal, where they quote the prosecution supporting this claim construction. And when they quote it, there's a long quote that starts with the word while, suggesting a temporal limitation, and then it says the operator command when it gets here. But if you look at the prosecution history on that page, there is no such quote. What they've done is conflate two sentences together that are two different sentences in the prosecution history, but one sentence in their quote. And then they've added the term while, to which there's no support for in the quote, and they've changed the word and to the, which is what the prosecution history says is and, the indefinite article. So, back to, there's no support in the claim construction, and if you compare it to the 388 claims, and the 388 patent, which is a divisional in the same spec, it's the, there they include when in the claims. And they include the language that ties them together, just like the second and third controller limitations here. So, you can see the 097 claims didn't require the motor supplement and rate limit wearing clauses to occur at the same time. But if you go to the 388 claims, you can see in claim one there, they do require them together because they add the word when to the claims. And they say where the motor supplement provides the additional torque that's being requested by the engine. But, again, it doesn't matter on that issue. Anything further? No, I think that's it. Any other further questions? Thank you. Thank you. Bernal? Thank you, Your Honors. In my minute of time, let me be brisk. First of all, my brother referred to the Anderson paper and talked about the emissions description accurately at page 7 of 9 of the paper. She sets up the fact that slow transients are a good thing, and then in the next paragraph tells us how to accomplish it. And she tells us very clearly that you use that series hybrid that decouples the engine from the demands of the driver. The court also asked him about whether or not there was any expert disclosure of controlling a series hybrid. And the answer is no. I checked the citations quickly. Controlling the engine in a series hybrid. Correct. That is completely absent from Ms. Anderson's paper, and it's not a great surprise because it's trivial. So in a series hybrid, recall, you can run the engine at a constant power at all times. Yeah, but what about during a startup? Startup is a special case, and so the way they treat that is they ramp it up very slowly, as Mr. Moore pointed out accurately. That you start the engine and allow it to ramp up using the inertia of the engine rather than forcing it in any particular mode. And what he described is, in fact, accurate. And is the controller doing that? It depends on the engine. So there are engines that would have that capability, but again, it's not limiting the rate of change. It's simply ramping up at a particular rate of change, and that's a difference. So the limitation has to be with respect to something. And the something in this case is the driver's demand. The driver says, I want to go fast, and the microprocessor says, no, I'm going to limit  And that's a difference. But in any case, the record is completely silent on whatever engine that might be that Mr. Moore was referring to. And if I can make one more point, the interaction of the wear-in clauses has been an issue. We've set it forth in our reply brief. I think we're out of time. Thank you, Mr. Creel.